IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PALAFOX STREET ASSOCIATES, L.P., et. al., | ) | |
| Plaintiffs, | ) | No. 99-898C |
| v. | ) | (Judge C. Miller) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S PRETRIAL MEMORANDUM WITH APPENDIX

Defendant respectfully submits its pretrial memorandum in response to Palafox Street Associates, L.P., et. al. ("Palafox") August 8, 2006 pretrial memorandum ("Palafox Mem.") and August 15, 2005 exhibit and witness lists ("Palalox Exhibits" and "Palafox Witnesses". Under separate cover, the Government submits its witness and exhibits lists.

I. The Claims At Issues

At pages 35-36 of its pretrial memorandum, Palafox discusses the claims at issue and we follow that numbering. Contrary to Palafox's representation that the claims set forth are identical to the claims submitted to the contracting officer, in one significant respect, the claims now set forth differ from the claims presented to the contracting officer and from the claims set forth in Palafox complaint. In claim number 7 to the contacting officer and its complaint, Palafox sought relief for alleged "GSA Subcontractor Backcharges" in the amount of $31,775

and “Damages Due to GSA Tenants Subcontractors’ failure to Perform Work in Order to Obtain a Certificate of Occupancy” in the amount of $20,402. Palafox now seeks $20,401 for alleged damage to existing work. Palafox Mem. at 36.

The Government’s position on Palafox’s various claims is as follows:

Claim 1 The Government contests liability and quantum as to Palafox’s "Option" claim in which Palafox seeks to recover the alleged present value of future rents that allegedly will not be paid because the Government allegedly will never exercise two five-year lease options.

Claim 2 The Government contests liability and quantum as to Palafox’s "Mold" claim in which Palafox seeks to recover its alleged costs of $250,599 for its remediation of mold that was observed in the building after the GSA assumed operation of the building.

Claim 3 The Government contests liability and quantum as to Claim 3 in which Palafox seeks to recover $421,385 for rent the GSA withheld upon the basis that the building was untenatable.

Claim 4 The Government contests liability and quantum as to Palalox’s claim for $79,030 that the Government directed the installation lighting in the courthouse allegedly exceeding the contract requirements.

<u>Claim 5</u>: The Government does not contest liability but contests quantum as to Palalox's claim for backlighting behind the seal in the ceremonial courtroom.

<u>Claim 6</u> The Government does not contest liability but does contests quantum as to Palafox's claim that it was require to modify witness stands to accommodate chairs.

<u>Claim 7</u> The Government does not contest liability but contests quantum as to Palafox's claim that subcontractors for the building tenants damaged Palafox's existing work.

<u>Claim 8</u> The Government contests liability and quantum as to Palafox's claim that the GSA's direction that Palafox install an aluminum jacket over flexible insulation was consistent with the contract documents.

<u>Claim 9</u> The Government does not contest liability but contests quantum as to Palafox's claim that GSA's direction that Palafox furnish and install plaster ceilings in the holding cells and adjoining areas constituted extra work.

## II. Palafox Cannot Prove Its Allegations Of Fraud, Misrepresentation, And Superior Knowledge Relating To What It Characterizes As A Donation Agreement Or Any Entitlement To Relief

As to claim No. 1, in its claim to the contacting officer, complaint, and pretrial memorandum, Palafox seeks relief upon the alterative theories of fraud, misrepresentation, and superior knowledge. Palafox contracted with the Government, thought the General Services Administration ("GSA"), to build and to lease a courthouse in Pensacola Florida. Palafox alleges that, at a pre-proposal conference, the GSA mislead Palafox as to what Palafox characterizes as a donation agreement. (Although Palalox refers to the document as a donation agreement and not signed by the GSA or any Government agent, because the document was solely executed by the City of Pensacola, we refer to the document a "donation document" or "Offer of Donation.") Palafox contends that, contrary to GSA's representation, an executed final copy of a donation document existed at the time of the pre-proposal conference. Palafox seeks, in the alternative, present value of the payments it would received, assuming the Government exercises two options after the 20 year base lease period, less costs, or reformation of the contract, or voidance of the contract. Palafox Mem. at 46.

Some of the facts relating to Counts I, II, and II of the complaint are not in dispute. Accordingly, the Government stipulates to paragraphs 1, 2, 6, 8, 9, 13, 16, 17, 18 19 of Palafox’s pretrial memorandum.

In brief summary, Palafox contends that GSA both at a pre-proposal conference and in a written notes of that conference forwarded to Palafox, mislead Palafox by declining to produce a copying of a previously executed copy of the donation document. GSA represented that the donation document was still in draft form. Palafox contends that, in fact, the donation document had been executed at the time of the pre-proposal conference. In its pretrial memorandum, Palafox asks the Court to infer that the GSA misstated the status of a donation document from correspondence prepared by the City of Pensacola, as follows.

> In a letter dated November 22, 1994 to Ms. Curran, the City indicated that the City had executed the Donation Agreement (a document which did not require the signature of the GSA four months earlier, stating in part: "[I] recall that you mentioned in a recent conversation that GSA may wish to modify the declaration of offer of donation **which was previously executed and delivered to GSA by the City.** If it's your intention to modify that document so as to provide that the offer of donation would occur in 30 years (rather than 20 years as the current declaration provides), please prepare a revised draft of that document. We also could present it to the City Council for consideration at its meeting on December 15.

> If such a revised declaration is to become effective, it would be appropriate for GSA to execute and deliver to the City a quitclaim and release of GSA's rights under the prior declaration."  This correspondence reflects that even before the project was put out for bidding in early 1995, GSA was aware of a conflict between its plans for the proposed lease contract to be awarded (20 years plus two five year options, totaling 30 years) and the terms of the Donation Agreement (transferring title to the government after only 20 years).

Palafox Mem. at 4.

It is unclear from Palafox's pretrial submissions how Palafox intends to prove that the City in fact executed a donation document prior to the pre-proposal conference, that GSA knowingly misstated the status of the donation agreement, or that Palafox relied upon GSA's statement that the donation agreement was not final.  Pursuant to FRE 1002, 1003, and 1004, in order to prove at trial the existence of the alleged donation document, Palafox has the burden either to introduce the original document, which we understand that it does not propose to do, or to produce a proper explanation for its failure to do so, which it does not do in its pre-trial submissions, thereby waiving any right to do so at trial.  Although Palafox has suggested informally during discovery that GSA officials and the City of Pensacola are engaging in a conspiracy to defraud Palafox as a basis to explain the absence of the document, Palafox correctly refrains from

suggesting in its pretrial memorandum any possible basis for the Court to make such a holding and, thereby, waives any right to present evidence and to argue at trial in support of such a contention as a basis to excuse its compliance with FRE 1002, 1003, and 1004.

Should Palafox seek to introduce the November 22, 1994 letter referenced in its papers for the purpose of attempting to establish the existence of a donation document, the Government is entitled to the introduction to the entire file of Mr. Fleming pursuant to FRE 106. The entire file would establish that the reading of the letter upon which Palafox bases its claim is simply erroneous. Mr. Flemming, attorney for the City of Pensacola, identified as a witness by Palafox, will testify that the City never executed a donation document prior to the pre-proposal conference as Palafox alleges and no GSA representative will testify that they ever received any such a document.

Should the Court reach the issue, Palafox, moreover, assumed the risk that the City of Pensacola might offer to donate the property to the United States at the expiration of the basic lease prior to the expiration of both options periods. Having both actual and constructive knowledge of the existence of a draft donation document, Palafox assumed the risk that the final offer of donation might contain terms that it would find

objectionable. The doctrine of assumption of risk, while often discussed in the context of torts, applies to contracts as well. See Restatement (Second) of Contracts' 239(2); Liebherr Crane Corp. v. United States, 810 F.2d 1153 (Fed. 05, 1987) (contractor could not seek reformation of bid based upon failure to review specifications).

Palafox's Counts I and II of fraud in the inducement and misrepresentation require the same element of a material misrepresentation upon which a contractor reasonably relied to its detriment. See AT&T v. Perry, 296 F.3d 1307, 1312 (Fed. Cir. 2002) (quoting T. Brown Constructors, Inc. v. Pena, 132 F.3d 724, 729 (Fed. Cir. 1998)); CTA v. United States, 44 Fed. Cl. 684, 692 (1999). In order to recover upon a claim for misrepresentation, Palafox must prove both that the Government made an erroneous representation of a material fact and that Palafox honestly and reasonably relied upon that misrepresentation to its detriment.

It its pretrial submissions Palafox fails to suggest how it now intends to prove that it relied upon the statement regarding the donation document at the proposal conference in submitting its proposal. Palafox properly admits that it had notice of the existence of a draft offer of donation agreement prior ro the submission of its proposal. Compl. ¶ 19 ("At said pre-proposal conference, the question was asked whether the offerors could see

copies of the Donation Agreement between the Government and the City."). Based upon discovery, however, we expect the testimony at trial to establish that the individuals who actually prepared Palafox's proposal never learned of the reference to a donation agreement at the pre-proposal conference and never reviewed the minutes of the pre-proposal conference to learn of the reference. Since 1967, Florida Statutes, § 286.011, Florida's Sunshine Law, has required state and local agencies to conduct their business "in the sunshine" and provided a broad right to public access. Thus, Palafox , on notice of a draft agreement, had the opportunity and right to request a copy of the any draft offer of donation from Pensacola, which would clearly would have been preferable from GSA releasing a preliminary draft document. Palafox, for its own reasons, elected to make no inquiry as to the terms of the Offer of Donation. Whether Palafox inadvertently or consciously failed to make no inquiry has no proper relevance. Palafox assumed the risk that it might find the terms of the Offer of Donation objectionable.

The basis upon which Palafox intends to prove its alleged damages as the result of the alleged misstatement is unclear. Correctly stating that "[t]he parties have not requested that proceedings be bifurcated in this case", Palafox then suggests that "the Court should make findings as to liability and damages

simultaneously **unless** the Court determines the trial record is insufficient for that purpose." Palafox Pretrial at 50 (emphasis added). No basis exists for the Court to make such a finding and, upon that basis, indefinitely continue the proceedings as Palafox suggests. To the extent that Palafox fails to meet its burden of proof at trial, the Government is entitled to entry of judgment in its favor.

Palafox's memorandum fails to demonstrate how Palafox intends to prove that GSA has made a decision not to exercise the two five-year options, as Palafox's claim for the present value of rent payments assumes. In paragraph 26 of its Complaint, Palafox alleges that the GSA has already determined not to exercise its rights on the option and to accept the property at the end of the lease expiration pursuant to the Offer of Donation from Pensacola. In support of this contention, Palafox relies upon an alleged statement to this effect by Daniel Koenig, a former employee of GSA. Palafox's reliance upon Mr. Koenig's statement as support for the contention that the GSA has determined to accept Pensacola's offer of donation and, upon that basis, not to exercise the two five-year options is insufficient as a matter of law on several bases. Although Palafox identifies Mr. Keoneig as a prospective witness, he previously was outside the country and Palafox did not depose him pursuant to

Fed. R. Civ. P. 28(b)(governing foreign depositions), and its is unclear whether Palafx will obtain his presence for trial. His testimony has no proper relevance because neither the Administrator of the GSA nor the Commissioner of Public Building Services, moreover, has made a decision as required by 40 U.S.C. § 3175 whether to accept the offer of donation made by Pensacola for the courthouse.1

The final Offer of Donation provides that, once the Lease between Palafox and the Government expires, Pensacola will then make an Offer of Donation to the GSA. At that time, 40 U.S.C. § 3175 requires the Administrator to decide whether to accept the

[1] Section 3175 of title 40 (previously codified at 40 U.S.C. § 298a (1994)) governs the process by which the United States may accept gifts of real property. Section 3175 provides as follows:

> [t]he Federal Works Administrator [Administrator of General Services], together with the Postmaster General where his office is concerned, is authorized to accept on behalf of the United States unconditional gifts of real, personal, or other property in aid of any project or function within their respective jurisdictions.

Id. Section 3175 requires that the Administrator of the GSA determine whether the United Stats will accept gifts of real property. The Pensacola Offer of Donation reflects this statutory requirement, as the document offers the property to the United States and does not purport to be an agreement to transfer the property as Palafox contends. Pursuant to the lease, the GSA thus has until December 1, 2016, to decide whether to exercise the first five-year option under GSA lease No. GS-04B-35055 (hereinafter "Lease") for the courthouse.

offer of the property. In its complaint, Palalox correctly refrains from suggesting that the Administrator has determined to accept the gift of real property from Pensacola, which determination is to be made some fourteen or twenty-our years in the future. Mr. Koenig's alleged statement of the Government's intent is entirely immaterial. Regardless of what Mr. Koenig may have said, Palafox cannot meet it burden to demonstrate Mr. Koenig had the authority to make the Administrator's statutorily required decision and accept the gift on behalf of the United States. See Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384-85 (1947) ("everyone is charged with knowledge of the United States Statutes at Large.").

Palafox's reliance in Count III upon the superior knowledge doctrine is similarly misplaced.

> The superior knowledge doctrine imposes upon a contracting agency an implied duty to disclose to a contractor otherwise unavailable information regarding some novel matter affecting the contract that is vital to its performance. The doctrine of superior knowledge is generally applied to situations where: (1) a contractor undertook to perform without vital knowledge of a fact that affects performance costs or duration; (2) the government was aware the contractor had no knowledge of and had no reason to obtain such information; (3) any contract specification supplied misled the contractor or did not put it on notice to inquire; and

> (4) the government failed to provide the relevant information.

Giesler v. United States, 232 F.3d 864, 876 (Fed. Cir. 2000) (citation omitted). The court in Giesler held that '[b]ecause [the appellant] could have readily obtained this information, the government was not obliged to volunteer it." Id. (citing H.N. Bailey & Assocs. v. United States, 196 Ct. Cl. 166, 449 F.2d 376, 383 (1971).

Although the GSA knew the Pensacola contemplated making an offer of the property to it, Pensacola, not the GSA, clearly the original source of the terms of any future Offer of Donation that it might eventually make. The GSA did not create the final document and was not a party to the document. Palafox has not alleged that it made inquiries to Pensacola as to the status or terms of the agreement and points to no duty by the GSA to provide the preliminary information it possessed. "[T]he government is under no duty to volunteer information in its files if the contractor can reasonably be expected to seek and obtain the facts elsewhere." H.N. Bailey & Assocs., 196 Ct. Cl. at 178, 449 F.2d at 383.

The GSA did not have superior knowledge that could not be gained from another public source. Palafox's claim for an equitable adjustment relying upon the doctrine of superior

knowledge fails based upon the undisputed facts, and defendant is entitled to judgment on Count III as a matter of law.

As discussed above, Palafox's claims for damages in Counts I, II, and III are purely speculative, because they rest upon the assumption that the Government will not exercise options, and not allowable for that reason. Moreover, we do not expect that Palafox can prove the expenses it would have incurred during the option periods. This Court's predecessor, the Court of Claims, adopted a basic rule for awarding damages for common-law breach of contract:

> In awarding compensatory damages, the effort is made to put the injured party in as good a position as that in which he would have been put by full performance of the contract, at the least cost to the defendant and without charging him with harms that he had no sufficient reason to foresee when he made the contract.

Northern Helex Co. v. United States, 207 Ct. Cl. 862, 875, 524 F.2d 707, 713 (1975) (quoting Restatement of Contracts ' 329 cmt. e), cert. denied, 429 U.S. 866 (1976)). As the claimant, the "[p]laintiff bears the burden to establish clear proof that it was injured as a direct result of defendant's alleged breach" and that its damages are not speculative, remote, or unforeseeable. Quiman, S.A. de C.V. v. United States, 39 Fed. Cl. 171, 183 (1997), aff'd, 178 F.3d 1313 (Fed. Cir. 1999). Further, it has

the burden to establish "reasonable certainty" as to each item within its damages claims. Wells Fargo, 88 F.3d at 1023; see Restatement (Second) of Contracts ' 352 cmt. a ("[a] party cannot recover damages for breach of a contract for loss beyond the amount that the evidence permits to be established with reasonable certainty").

Officials with the requisite authority have made neither of the determinations upon which Palafox's claim of damage is entirely contingent. No proper official has either determined to accept Pensacola's Offer of Donation or to decline to exercise the Government's two 5-year options on the lease. Under these circumstances, Palafox's claim for damages is speculative and not allocable for that reason.

As alternative bases for relief under Counts I, II, and III, Palafox seeks either reformation of or voidance of the contract. Palafox Mem. at 46. We do not expect that the evidence at trial will support either a holding that Palafox is entitled to reformation or voidance or that Palafox will be able to prove at trial that Palafox is entitled to any relief in the of reformation or voidance. As discussed above, because this matter is not bifurcated, Palafox has the burden to prove any entitlement to relief at trial.

As to its option claim, Palafox fails to demsotrate how it will prove the quantum to which it alleges entitlement. Palafox does not suggest in its submissions any basis upon which the Court can make findings as to Palafox's projected costs during the option period, the appropriateness of an award based upon future payments, or the discount rate that should be applied to future payments.

II. As To Claim No. 2 (Repair Costs) (Count IV), Palafox Had The Contractual Obligation To Correct Defective Work And The Basis Upon Which It Intends To Prove Its Damages Is Not Apparent From Its Submissions

Palafox has no entitlement to compensation for repair work because Palafox had a contractual obligation to repair defective work purusnt to contract provision 52-246-21, Warranty of Construction. Palafox's contention that GSA's specification of vinyl wall paper relieves it of its obligation to do the repair work is meritless because Palafox designed the building and specified vinyl wall-papers as an option. Palafox's contention that the Government's operation of the building in some manner contributed to the problem is meritless because Palafox never instructed the Government to operate and to maintain the building's systems in a specific manner. Although the precise basis for Palafox's claim that its own architect was responsible for "errors and omissions" remains unclear, Palafox apparently

itself recognized the existence of “errors and omissions” and asserted a claim against its architect for “errors and omissions”

III. As To Claim No. 3 (Count IV), Palafox Has No Entitlement To Relief For Withheld Rent In The Amount of $421,385 Because The Building Was Not Tenantable.

Palafox has no entitlement to relief for rent in the amount of $421,385 because the lease provided that “[t]he obligations and covenants of the Lessor, and the Government's obligations to pay rent and other Government obligations and covenants, arising under or related to this Lease, are interdependent.” Mutuality of Obligation (GSAR 552.270-39). Because Palafox failed its obligations under the lease, and as a consequence of such failure the premises were not tenantable, the Mutuality of Obligation clause suspended the Government's obligation to pay rent. The flooding of the building and existence of mold establishes that Palafox did not comply with its obligations under the lease and that the building was not tenantable as delivered.

IV. As To Claim No. 4 (Additional Lighting), Palafox Has No Entitlement To Relief Because The Government Directed Palafox To Provide Lighting In Accordance With The Contract Provisions

As to claim No. 4 (Additional Lighting), Palafox has no entitlement to relief because the Government directed Palafox to install lighting in accordance with the contract provisions. Palafox’s contention that”[p]laintiffs were required to provide

additional lighting in the courthouse above and beyond the contract the requirements set forth in the contract documents," Palalox Mem. at 36, is simply incorrect. The testimony and evidence will show that the Government required Palafox to install lighting in accordance with the contract requirements.

V. As To Claims Nos. 5 (Court Room Seal), 6 (Witness Stands, 7 (Damage by Tenants), And 9 (Plaster Ceiling) (Count IV), the Government Does Not Contest Palafox's Entitlement To Relief As To Liability, But Does Contest Palafox's Entitlement To The Quantum Claimed Or To Any Quantum

As to claims nos. 5 (court room seal), 6 (witness stands, 7 (damage by tenants) and 9 (plaster ceiling) (count IV), the Government does not contest Palafox's entitlement to Relief as to liability, but contests Palafox's entitlement to the quantum claimed or to any quantum. As discussed below, the evidence upon which Palafox apparently intends to rely to prove its entitlement is not clear form its submissions.

VI. As To Claim No. 8, Palafox Has No Entitlement To Relief Because The Specifications Required a Metal Jacket Over Exterior Insulation.

As to Claim No. 8, Palafox has alleged that GSA's direction to install a metal jacket over exterior insulation was work not required by the contract. Palafox has no entitlement to relief because contract provision 1520-3.12c specifically required the installation of a metal jacket over exterior insulation.

VII. Evidentiary Issues.

The Government has identified several potential evidentiary issues, discussed below.

Palafox's exhibit No. 1 Palafox's exhibit No. 1 is its claim to the contracting officer, a large composite exhibit. In the absence of specific clarification in Palafox's pretrial memorandum, we are not aware of the precise manner in which Palafox anticipates utilizing exhibit No. 1. Government counsel has not be able to resolve this issue with Palaofx's counsel Appendix 1-7.

While the Government will have no objection to the admission of the entire claim solely for the limited purpose of establishing the issues placed before the contacting officer, the Government will object to the Court's consideration of significant portions of the claim and various attachments for the purpose of establishing truth of the matters asserted therein, in the absence of a proper evidentiary basis. No proper basis is apparent for the admission of the summary and statement of the claims for the truth of the matters asserted therein.

Palafox's claim contains numerous summaries and itemizations of the particular monetary claims which do not appear to meet the requirement for admission of summaries into evidence pursuant to Rule 1006. See Amarel v. Connell, 102 F.3d 1494 (9th Cir.

1997); Conoco Inc. v Dept. of Energy, 99 F.3d 387, 393 (Fed. Cir. 1997; Martin v. Funtime, Inc., 963 F.2d 110, 115-16 (6th Cir. 1992); Fagiola v. National Gypsum Co., 906 F.2d 53, 57-59 (2d Cir. 1990).

Palafox in exhibit number No. 1 and in other exhibits identifies various memorandum Palafox employees prepared. These memoranda are not properly admissible for the truth of the matters asserted therein as business record exceptions to the hearsay rule, because they were prepared in anticipation of the submission of a claim and litigation and purusant to counsel’s direction that Palafox’s employees not establish a paper trial which would establish the negligence of Palafox’s subcontractors.

Mr. Martin is identified as a witness “likely [to] testify about the damages claimed by Keating in connection in this case.” Palafox Witness List No. 10. Based upon his deposition testimony, the Government understands that Mr. Martin does not have direct personal knowledge of Palafox’s alleged costs and we expect to object to his testimony upon that basis.

Palafox has identified Mr. Lewis Newlan of Thompson Engineering as a witness stating that he “was an expert hired by Plaintiffs in 1997-98 to investigate the mold outbreak that is a subject in dispute in this case and indicating that “he is likely to testify about [his] reports at trial.” Palafox Witness List,

No 11. Palafox has not complied with the provision for Fed. R. Civ. P. 26(a)(2) for the presentation of expert testimony and we expect to object to his testimony and the entry into evidence of his reports and any testimony based upon his reports upon that basis.

CONCLUSION

For the reasons set forth above, we do not expect that Palafox will be able to prove at trial its entitlement to relief.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

TODD M. HUGHES
Assistant Director

/s/ JOHN S. GROAT
JOHN S. GROAT
Attorney
Commercial Litigation
Civil Division
U.S. Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202)616-8260
Facsimile: (202)514-7965

OF COUNSEL:
THOMAS HAWKINS
Senior Assistant General
Branch Counsel
General Services Administration
1800 F St., NW Room 4131
Washington, D.C. 20405

September 8, 2006

Attorneys for Defendant