*#468 U.S. Federal Courthouse, Pensacola,Fl*
*CE #358 to Mold/Mildew at Exterior Walls with*
*Vinyl Wallcovering*
*Page 2*

| | |
|---|---|
| | observations. Conclusions, based upon overview of building and the contributing material and technical components observed. |
| 10/10/97 | Thompson Engineering; On site Inspection: Mr. Lewis Newlan inspected progress of remedial work, its protocol, and measured all areas for moisture. Walk through and tests observed by GSA and Courts. |
| 10/15/97 | **Pensacola News. Journal; "Mold, Mildew Plague New Courthouse":** Chief Clerk, Mr. Bob Mossing, interviewed publicizing the mildew problem. GSA and KDC working on matter, not available for comment. |
| 10/15/97 | **KBC (C.Vann) to GSA (D. Koenig) Remediation Work in Progress:** Letter issued by C. Vann to GSA. Mr. Dan Koenig. Keating Building Corp. recommends painting drywall after remediation treatments. Also notable, moisture readings in Judge Collier's office where vinyl wallcovering has been installed by Collier's contractors, after removing Keating's fabric wall coverings. Please correct this. |
| 10/17/97 | **KDC (M. Sencindiver) to GSA (K. Johnson) Remediation & Report:** Mr. Sencindiver notice to Ms. Johnson, remediation in progress and Thompson Report 10/10/97 attached: Keating has ascertained cause to be vinyl wall covering. Architect also notified. Keating contracted independent consultant, Thompson Engineering. Vinyl is acting as a vapor barrier to exterior wall system. Keating has built the building in accordance with SFO/Lease/U.S.C.D.G./approved finishes. |
| 10/19/97 | **Thompson Engineering Report from 10/10/97 Tests and Inspection:** All exterior walls with vinyl wall coverings are moisture laden. All painted and fabric wall covering exterior walls are dry. All interior walls are dry. Vinyl wall covering is a vapor barrier. Cycling of air conditioning causes pumping action. |
| 10/23/97 | **KBC (C. Vann) to GSA (D. Koenig) ;Affirm GSA "Stop Work!" Orders:** C.Vann letter to D. Koenig to confirm order to stop remediation work. |
| 10/23/97 | **KDC (M. Sencindiver) to GSA (K. Johnson); Affirm GSA "Stop Work" Order":** We were on schedule to complete remediation work prior to the completion of security and audio work by the Government. Keating is being delayed, we anticipate your direction to complete. |

| | |
|---|---|
| 10/27/97 | **KBJ to KBC; Memo Recommendations for Alternate Paint and Fabric Wallcovering:** K.B.J. Architects provided a summary of alternate decorative paint and fabric applications, complimentary to the original vinyl wallcovering approved and specified by the Government. |
| 10/30/97 | **GSA (D. Koenig) to KDC (M. Sencindiver) Temperature and Humidity Readings:** Cannot be performed by KDC consultant, Thompson Engineering. Thompson does not provide best means of remediaton. Thompson indicated that all drywall should be replaced to GSA and Courts representatives. GSA will commission an independent analysis to identify actual cause and appropriate solution. |
| 11/03/97 | **GSA (Pensacola) to GSA (Atlanta): Printout of HVAC Cycling:** Limited printout of HVAC system (Chiller #2 only) activity, "on/off report" from D. Johnson of Pensacola GSA building maintenance staff to Dan Koenig. |
| 11/04/97 | **KDC (D. Bitterlich) to GSA (D. Koenig); GSA Independent Consultant Not Determined:** Keating remediation was timely and stopped by GSA. The drywall treated by Keating eliminated mold. GSA may require 100% replacement. No GSA consultant has been determined and time is of the essence. |
| 11/05/97 | **GSA (D. Koenig) to KDC (D. Bitterlich), CH2MHill Award:** Mr. Koenig memo to Mr. Bitterlich to confirm GSA commissioning CH2MHill to investigate mold problem. Fax memo includes David Odom resume. CH2MHill to arrive on suite on 11/6/97, tomorrow. |
| 11/06/97 | **CH2MHill Inspection I:** Representatives of CH2MHill toured entire building with C. Vann. Copy of Thompson Report copied to CH2MHill. Mr. Vann discussed all remediation protocol that was being performed by Phoenix/Keating. No comment or direction. |
| 11/06/97 | **KDC (D. Bitterlich) to GSA (D. Koenig), On-Site Mtg. Follow-Up:** Issued attendee list along with resume and brochure of Phoenix Coatings, Keating remediation subcontractor. Reiteration that GSA stopped work by Keating/Phoenix. CH2MHill observed all conditions with those present. CH2HMill stated they would perform moisture readings in afternoon. Mr. Bitterlich would fax additional Thompson Report to CH2MHill. Acknowledgment of proposal conference call on 11/07/97 to determine start-up of Phoenix's remedial work. |

| | |
|---|---|
| 11/07/97 | **GSA/CH2MHill; Field Report Due:** Mr. Koenig stated that GSA would issue a field report to Keating based upon the observations from 11/6/97. None received. |
| 11/07/97 | **Telecon: Koenig, GSA with C.Vann, KBC:** Mr. Koenig stated CH2MHill conclusion same as Keating, vinyl wall covering is the cause. However, moisture infiltration is created by HVAC exhaust fans operating continuously, causing negative pressurization of the building. Mr. Koenig expects CH2MHill's full report next Wednesday, Keating is not allowed to remediate until directed by GSA. |
| 11/11/97 | **KDC (D. Bitterlich) to GSA (D. Koenig): Fabric Wall Covering Removed, Vinyl Wall Covering Installed:** Judge Collier's office and conference room has had wallcovering replaced by an independent contractor. Keating does not warrant or accept liability for this work or action. |
| 11/12/97 | **GSA/CH2MHill Field report due (faxed):** Mr. Dan Koenig called Mr. Bitterlich and left voice mail message at 9:04 A.M. to confirm that the CH2MHill report and protocol was due today. A copy would be faxed to Keating. |
| 11/12/97 | **Telecon: D. Koenig, GSA with M. Sencindiver and D. Bitterlich, KDC, CH2MHill/GSA Courts Status:** No protocol provided by CH2M Hill, cause is vinyl with exhaust system operation impact. No finish selection. Courts think vapor barrier is missing. |
| 11/12/97 | **KDC (D. Bitterlich) to GSA (D. Koenig), Phoenix Protocol and Specifications:** Follow-up to conference call (Koenig/Sencindiver/Bitterlich), KDC issued Phoenix Coatings correspondence and specifications and material data to GSA and Courts. |
| 11/12/97 | **GSA (D. Koenig) to KDC (M. Sencindiver), Summary of CH2MHill Preliminary Report/"Do Not Proceed":** GSA issued fax copy of CH2MHill recommendations report dated 11/12/97. GSA memo states, "Do Not Proceed". Memo points, a) remove all vinyl. If severe mold, remove vinyl and drywall together; b) continue to use diluted bleach as a mildewcide on the remaining areas of mold; c) verify that fabric wallcovering used on project is permeable, as well as wall sealers; forward manufacturer data. |

| | |
|---|---|
| | d) tape/seal open joint at top of drywall above ceiling on all exterior walls. e) paint all walls that have vinyl removed. Verify paint is permeable and has mildewcide. |
| 11/13/97 | **KDC (D. Bitterlich) to Phoenix Coatings (George Atchison), Prepare to remobilize on 11/17/97:** Confirms 11/12/97 telephone call to schedule and prepare to remobilize remediation process. Issued copy of GSA/CH2MHill Preliminary Report and requested data sheets. |
| 11/13/97 | **KDC (D. Bitterlich) to GSA (G. Atchison), Keating Directive to Phoenix to Proceed with Remediation:** Based upon CH2MHill recommendations, Keating has issued directive to Phoenix to complete vinyl and drywall removal work and treatments, consistent with CH2MHill and the prior Keating/Phoenix effort. Keating's initiative is to mitigate further delays and time for use of building which were suitably addressed previously. Keating does not agree with CH2MHill, point number 4, regarding tape/seal top of drywall. Further explanation and purpose required as well as scope. |
| 11/14/97 | **Conference Call, GSA/KDC/CH2MHill:** Scheduled by GSA, did not occur, postponed to Monday, November 17, 1997. |
| 11/14/97 | **KDC (D. Bitterlich) to GSA (D. Koenig), Repeated Conference Call and CH2MHill Report Delays:** Repeated delays of conference call with CH2MHill and Project Team members, as well as no distribution of CH2MHill report as promised. Keating is dutifully proceeding with remediation, per CH2MHill recommendations, with proper protection methods, complete with paint application with mildewcide. Keating will seek renumeration of all costs due to mold/mildew remediation and damages. Building mechanical system was cycled by GSA. Report data issued indicates cycling, however, report is not complete. Keating recommends GSA to change operation measures. |
| 11/18/97 | **GSA (D. Koenig) to KDC (D. Bitterlich); Conference Call Summary Letter:** Mr. Koenig letter to Mr. Bitterlich to summarize discussions, including the Courts and Judges. a) Building is well sealed with high level of positive pressurization, b) primary source of moisture would be depressurization of building, system off, exhaust continues to run, c) secondary cause could be plenum drywall joint, all of which caused vinyl to act as vapor barrier. GSA, KDC, Landis and Staefa to assure building does not depressurize, to interlock exhaust with HVAC system. Test to |

verify with GSA maintenance. KDC to complete treatment and GSA and KDC to reach agreement of removing additional drywall. KDC to document plenum seal joint, discuss with GSA and CH2MHill. GSA to work with Courts to determine wall finish. CH2MHill final report by 11/21/97.

| | |
|---|---|
| 11/19/97 | **KDC (D. Bitterlich) to GSA (D. Koenig), Conference Call Summary Memo:** Mr. Bitterlich memo to Mr. Koenig to summarize discussions. Affirmed that cause is the vinyl wall covering on exterior walls and building HVAC system cycling. This is a GSA control function of operations. Keating will seek reimbursement for costs and damages. The noted secondary cause, sealing the above plenum drywall joint, is of no impact or cause as stated in your letter. |
| 11/19/97 | **KDC (D. Bitterlich) to GSA (D. Koenig), and CH2MHill (D. Odom), Plenum Drywall Seal Detail:** We intend to foam fill insulation joint or gap beginning on 11/20/97. Verify if CH2MHill has added concerns. |
| 11/24/97 | **KDC (D. Bitterlich) to GSA (D. Koenig), and CH2MHill (D. Odom) and HLM(M. Wass): Plenum Drywall Seal Detail:** Mr. Koenig, request at Plenum detail requires further discussion and explanations. The "gap" is not a "gap" and does not allow air movement. What is the purpose? |
| 11/24/97 | **CH2MHill to GSA, Proposal for Additional Services:** Review wall plans and submittals, plan a testing program. Travel to site and conduct pressurization measurement under various operating scenarios, document results, meeting with GSA, Keating, Landis & Staefa and discuss conclusions. |
| 12/1/97 | **GSA (D. Koenig) to KDC (M. Sencindiver) Summary of Status Letter** dated 11/28/97: 1) Continue work and provide agreed paint on fabric wall covering. GSA will direct finish next week. 2) Remove all drywall and insulation; witnessed mold on insulation 3) verify permeability of fabric wall covering and priming paint. 4) tape/seal plenum joints 5)Keating responsible for coordinating resolution, CH2MHill cost to be $12,365. and deducted from rent. Conclusions include: infiltration due to depressurization of building, Keating engineers responsible for sequence of operations; Architect should have advised of potential problem. All infiltration is design issue, |

| | |
|---|---|
| | Keating responsible. |
| 12/2/97 | **KDC (D.Bitterlich) to GSA (D. Koenig) Status of HVAC Data/Report and Final CH2MHill Report:** Mr. Bitterlich reiterated Keating request for Mr. Ducote, GSA Property Management, complete building operations data and reports and the final draft issued by CH2MHill of the 11/18/97 report based upon the 11/6/97 inspection. |
| 12/08/97 | **KDC to GSA, Alternative Accept Paint Color for Exterior Walls:** Transmittal with recommended accent paint schedule and samples, selections cohesive with decor of each room's existing finish. (Issued onsite directly by Mr. Bitterlich to Mr. Plemmons, GSA and Mr. Marrs, U. S. District Courts on 12/09/97). |
| 12/08/97 | **KDC to Harden Assoc. for KBJ: Notice KBJ Liability Insurance:** M. Sencindiver letter to KBJ liability insurance certificate holder notification of alleged problems and investigation. Requested acknowledgment of receipt. |
| 12/08/97 | **KDC (M. Sencindiver) to GSA (K. Johnson), Response to GSA Claim/Responsibility Letter 12/4/97:** M. Sencindiver repeatedly called Mr. Koenig to discuss without response. Keating considers to be instructed by GSA to remove all drywall. Keating does not agree that mold/mildew is result of any act/responsibility of Palafox Street Associates. We do not waive our right to claim against GSA. We are ready to complete removal of drywall, but await GSA/Consultant protocol method. This is due to GSA "Stop Work" Order based upon GSA's insistence to have their consultant define problem and suggest a remedy. Keating requires, 1) GSA's acceptable protocol 2) GSA representative present to observe work, 3) and, GSA representative certify work complete and satisfactory. Keating does not agree that testing of the system for depressurization is our obligation. We are reviewing our design compliance to SFO and await GSA information of operative modifications. |
| 12/08/97 | **KDC to Cosentini, Landis & Staefa, Unoccupied & Occupied Test Data:** Print-out with notes from Landis and Staefa, faxed to Igor Beinstock of Cosentini Associates. |
| 12/09/97 | **KDC to GSA, Alternative Accent Paint Color for Exterior Walls:** |

| | |
|---|---|
| | Transmittal with recommended accent paint schedule and samples, selections cohesive with decor of each room's existing finish. (Issued onsite directly by Mr. Bitterlich to Mr. Plemmons, GSA and Mr. Marrs, U. S. District Courts on 12/09/97). |
| 12/11/97 | **KDC (M. Sencindiver) to GSA (K. Johnson); Project Status Summary Letter:** Issued by M. Sencindiver to K. Johnson respective to nineteen points. Item No. 10- Mold/Mildew, "See my response of December 8, 1997." |
| 12/12/97 | **KDC (D. Bitterlich) to Phoenix Coatings (George Atchison), Request Paint and Sealant Permeability Data:** Telephone memo by D. Bitterlich to George Atchison, Jr., Phoenix Coatings, requesting manufacturer data in regard to paint and sealant's permeability. |
| 12/12/97 | **KDC (D. Bitterlich) to GSA (D. Koenig); Phoenix Coatings Paint and Sealant Permeability Status:** Mr. Bitterlich forwarded Phoenix Coating's response that Sherwin Williams Paint Company does not test for, nor assign, a perm. rating to its primers or latex based paints. |
| 12/12/97 | **KDC (D. Bitterlich) to GSA (D. Koenig), GSA "Draft" Protocol issued on site:** Mr. Bitterlich telephone memo to Mr. Koenig confirmed GSA directives on site to Keating's Mr. Dirscherl. Keating has commenced with remediation. GSA's consultants protocol due to Keating on 12/09/97, issued on-site to Mr. Dirscherl on 12/12/97. Scope of protocol in a rough draft form. Not tailored to this project's requirements. GSA intends to issue to CH2MHill final draft protocol on 12/15/ or 12/16/97. GSA will notify of any on-site concerns with remediation work. |
| 12/15/97 | **KDC (D. Bitterlich) to GSA (D. Koenig and R. Ducote) 2nd Urgent Request for HVAC trend and Maintenance Data:** Mr. Bitterlich memo to Mr. Koenig and Mr. Ducote, repeating request for trend data and building maintenance logs for review and analysis to evaluate system operation in preparation for pending system operating concerns. |
| 12/15/97 | **GSA (D. Koenig) to KDC (D. Bitterlich), Site Mtg. & Issuance of Prelim. Protocol:** Mr. Koenig provided fax scope of work with extensive mark-ups by Mr. Koenig following receipt from CH2MHill. Mark-ups required to better suite scope to Pensacola issue. Mr. Koenig notes this information was |

provided in field to Mr. Dirscherl, KBC.

12/16/97 **KDC (D. Bitterlich) to Courts (Jim Marrs), Zolotone Samples:** D. Bitterlich UPS transmittal of Zolotone Paint samples to Mr. Marrs for alternate finish for exterior walls with vinyl wall covering. (copied issued to D. Koenig, GSA and Jim Marrs, Courts)

12/16/97 **GSA (D. Koenig) to KBC (C. Vann) "URGENT". Do not remove Vinyl Wallcovering in Rooms 422 and 425:** Memo from Dan Koenig to C. Vann; "After further review, we would request that the wallboard in the fourth south chambers, Rooms 422 & 425 *not* be removed. Please do not remove wallboard or wallcovering in these rooms. Please call to "Confirm" cc: Buzzy Ducote, Don Bitterlich.

12/16/97 **GSA (K. Johnson) to KDC (M. Sencindiver), Job Status Ltr (undated):** Item No. 10. Mold/Mildew Issue - Per on-site inspection:

a) GSA (D. Koenig, and KDC (D. Dirscherl) agree on the protocol of wallboard removal (CH2MHill Rough Draft) faxed on 12/15/97.
b) GSA and KDC agree to remove all wallboard in the 32 rooms recommended on KDC list.
c) GSA representatives will be on-site to observe the wallboard removal, on-going, to completion and certify satisfactory completion.
d) protocol outlines methods of care for removal and protection,
e) per Mr. Dirscherl, KBC; work should be completed 12/19/97.
f) samples of solid accent paints were provided by KDC to GSA on 12/11/97,
g) Mr. Dirscherl agreed to provide speckled paint accent to GSA by 12/16/97. (Submitted by D. Bitterlich to Courts J. Marrs on 12/16/97, copied to GSA) GSA to promptly select accent paints to be used for finish on replaced walls.
h) KDC to submit permeability of fabric, priming paint, speckled paint by 12/19/97;
I) GSA to provide specific direction with regard to plenum wallboard/insulation joint treatment. CH2MHill will need to perform additional tests in January 1998 to confirm direction;
j) CH2MHill recommends to GSA, and GSA concurs that additional tests are required to ensure building is controlled to prevent depressurization under foreseeable building operating conditions by interlocking intake/exhaust controls systems;
k) GSA gave notice-to-proceed to CH2MHill for testing 11/18/97,

| | |
|---|---|
| | schedule for 1/14-15/98 (GSA to confirm). |
| 12/17/97 | KDC(D. Bitterlich) to Reynolds (R. Frazier), GSA Draft Protocol 12/15, and Rm 422 & 425 Memo 12/16: Mr. Bitterlich follow up with telecon and on-site discussion to proceed with remediation based upon GSA's draft protocol. Also issued memo from GSA, Do Not Remove vinyl Wallcovering recently installed in Rm. 422 and 425. |
| 12/17/97 | KDC (D. Bitterlich) to Cosentini (Igor Beinstock);Issued copies of CH2MHill Report 11/14/97 and Thompson Report 10/7/97: Full compliment of Mold/Mildew reports and GSA draft protocol. |
| 12/17/97 | KDC to GSA, Request for Permeability data of Vinyl Wallcovering in Rooms 422 & 425: D. Bitterlich memo to D. Koenig request for permeability of vinyl wallcovering installed in Judge Collier's chambers suite by contractors working for either GSA, Courts or Judge Collier. |
| 12/17/97 | Judge Vinson to GSA( D. Koenig): Fabric wall covering revised to vinyl wallcovering in Rms. 422 and 425. (copied to Judge Collier, Courts and D. Bitterlich, KDC). Judge Vinson asserts that FWC was not properly installed, therefore, Collier changed FWC to VWC in October without GSA or KDC notification. There was no mold/mildew at the time. Walls were dry when vinyl was installed. Vinson states that "Keating should be directed to seal wallboard above ceiling and leave vinyl in place. Since area of vinyl is small, (in Collier's chamber suite) possible future remediation should be relatively easy." |
| 12/18/97 | GSA (D. Koenig) to Courts (Judge Vinson), Confirm KDC directive "Do Not Remove V.W.C. at Rms. 422 and 425" and additional testing by CH2MHill: Mr. Koenig confirms to Judge Vinson that Keating was directed not to remove Courts installed vinyl wallcovering in Rms. 422 and 425. CH2MHill to perform additional testing on 1/15-16/98 and recommend sealing procedure at plenum. GSA will discuss intended action with Judge prior to direction to Keating. |
| 12/18/97 | KDC (D. Bitterlich) to GSA ( D. Koenig); Final Permeability Memo: Contacted Ms. Bolt and Ms. Sutton of K.B.J., No permeability data by manufacturer for fabric. Contacted Circle Wallcovering, no testing data is available for fabrics. Mr. Yerusalem stated that in 40 plus years in this business, all fabric is permeable, it is the nature of textile products. Mr. |

| | |
|---|---|
| | Manny Feldson of Maharam also contacted. "What is purpose for GSA reiterating requests; after responses issued on 12/12 and 12/16/97?" |
| 12/19/97 | **KDC(D. Bitterlich) to Cosentini (Igor Beinstock) and Landis & Staefa (B. Marcus); CH2MHill Testing on January 14-15:** Mr. Bitterlich memo to verify notice of additional GSA testing and protocol; affirmed to be 1/15-16/98. |
| 12/22/97 | **KDC (D. Bitterlich) to GSA (D. Koenig); Affirmation of Protocol Procedures:** Mr. Bitterlich memo to Mr. Koenig to affirm to GSA, following telecon with C. Vann and G. Rusden, K.B.C. on-site that the draft protocol procedures were being employed in unpainted areas. |
| 12/22/97 | **KDC (D. Bitterlich to GSA (D. Koenig); KBJ (issued Maharam Tec. Data on Permeability:** Maharam Technical Data issued for fabric wall covering, no permeability data identified. Mr. Bitterlich called Mr. Feldson, V.P. for Maharam, "permeability testing is not performed or recorded." |
| 12/22/97 | **Cosentini (Igor Beinstock) to KDC (D. Bitterlich); CH2MHill report 11/14/97, Question evidence of negative pressurization:** (copied to W. Morris, K.B.J., Bobby Marcus, L& S) Cosentini memo notes that CH2MHill reports negative pressurization readings in unoccupied mode due to building exhaust system operation. However, at testing time, no evidence of exhaust system operation and per Landis and Staefa, the exhaust fan was *not* operational due to a fan malfunction. L&S recorded a negative pressure so slight, cause would be due to wind or other weather factors, or overhead door open at loading dock. Cosentini reiterates that building is designed and installed per SFO. |
| 12/22/97 | **KDC (D. Bitterlich) to GSA (D. Koenig); GSA Issued Zolotone Samples to Courts:** Pursuant to Mr. Bitterlich follow-up for Zolotone selection by GSA, per 12/16/97 GSA letter, D. Koenig issued samples back to the Courts, for selection by 12/24/97. |
| 12/23/97 | **D. Bitterlich to Mike Sencindiver: GSA Lack of concern for future mold @ Collier Suite:** Inter-office summary memo, which concludes concern to notify GSA of liability and probability for mold/mildew in Rms 422 and 425 with vinyl installed by Courts. |

| | |
|---|---|
| 1/02/98 | **KDC (D. Bitterlich) to GSA (D.Koenig); Verify GSA Property Management Trash Disposal:** Mr. Bitterlich update memo to Mr. Koenig to verify Mr. Plemmons, GSA, regular field observation for GSA as remediation representative; conformation of remediation trash and debris disposal to GSA's dumpster, as agreed, and notice that drywall completed, tape/spackling in progress, near completion, schedule completion 1/5/98. |
| 1/02/98 | **KDC (D. Bitterlich) to GSA (D.Koenig): Courts Zolotone Selection/Qualification:** Mr. Bitterlich verification to Mr. Koenig that Mr. Marrs notified Keating 12/24/97 of the Courts selection of Zolotone ZN004-1B as an alternative to vinyl wallcovering. Mr. Marrs qualified that Zolotone was *not* acceptable to the Courts in chambers offices and conference rooms. Mr. Bitterlich concluded stating that KDC would assist GSA, if possible to procure a decision, and upon selection, Keating would provide a cost comparison for GSA evaluation. |
| 1/02//98 | **KDC (D. Bitterlich) to GSA (D. Koenig); Request for CH2MHill 1/15 Test Protocol/Schedule:** Mr. Bitterlich requests affirmation of 1/15 test date, so KDC may schedule their consultants and representatives, accordingly. Additionally, GSA/CH2MHill should submit detailed schedule with test protocol for Cosentini review stating its performance intent and purpose of analysis and intended conclusion/result. |
| 1/6/98 | **KDC (D. Bitterlich) to GSA (D. Koenig); No Finish Selection Issued, Delay I:** Mr. Bitterlich informed Mr. Koenig that remedial work and all wall finish preparation was completed on schedule, GSA still has not issued a directive to Keating for timely, completion of remediation protocol. |
| 1/8/98 | **GSA (D. Koenig) to KDC (D. Bitterlich); concern for Supervision of Remedial Work:** Mr. Koenig notes that Keating seemed to lack oversight during the Holiday. Workman tracked wet spackle from work location into corridor to elevator. |
| 1/9/98 | **KDC (D. Bitterlich) to GSA (D. Koenig); No Finish Selection Issued, Delay II:** Mr. Bitterlich informed Mr. Koenig that remedial work and all wall finish preparation was completed on schedule, GSA still has not issued a directive to Keating for timely, completion of remediation protocol. |
| 1/9/98 | **KDC (D. Bitterlich) to GSA (D. Koenig), Valid Supervision by** |

| | |
|---|---|
| | **Keating/Responsiveness to Concerns:** Protocol considerations are being implemented; Mr. Richard Frazier of Reynolds acted in Keating's behalf for C. Vann; the tracking of the wet spackle was removed once the material dried and was treatable by janitorial subcontractors. No further action or concern necessary. |
| 1/9/98 | **KDC (D. Bitterlich) to GSA (D. Koenig), CH2MHill Test Protocol Not Issued:** Second notice to Mr. Koenig requiring CH2MHill schedule of testing protocol to be performed on 1/15/98. This information is necessary to review with our consultants and systems contractor in assisting with the testing and its observations to achieve the intended results. |
| 1/9/98 | **GSA (D. Koenig) to KDC (D. Bitterlich); Zolotone Limited Selection; Vinyl wallcovering selection due 1/12/98:** Mr. Koenig memo to provide Keating limited directive for Zolotone application at remediated wallboard. GSA will direct Keating to *add* vinyl or fabric inside the chambers on 1/12/98. |
| 1/9/98 | **KDC (D. Bitterlich) to GSA (D. Koenig); Zolotone Selection Vinyl Wallcovering selection due 1/12/98:** Mr. Bitterlich responds in margin of Koenig fax stating that fabric and/or vinyl wallcovering selection would be a cost premium to remedial finishes. Keating complied with SFO and installed selected finishes as required initially. No paint preparations required for vinyl. GSA should re-evaluate their consideration of vinyl selection. |
| 1/9/98 | **KDC (D. Bitterlich) to Reynolds (R. Frazier); Notice to Proceed with Zolotone:** Mr. Bitterlich directed Reynolds to proceed with procurement of Zolotone material based upon coverage area directed by the GSA on 1/9/98. |
| 1/9/98 | **HLM (M.Wass) to GSA (D.Koenig), CH2MHill Testing/schedule for 1/15/98:** Mr. Koenig of GSA issued fax copies of CH2MHill's limited test protocol narrative in mem from HLM. Keating copied to Cosentini. The goal of CH2MHill testing is to determine which operation sequences cause the building to have negative pressurization. |
| 1/12/98 | **KDC (D. Bitterlich) to GSA (D. Koenig); Revised Remediation Finish Schedule; Notice of Additional Claims/Damages:** Mr. Bitterlich notice of Keating's right to claim for all costs for mold/mildew remediation. |

1/12/98 **GSA (K. Johnson) to KDC (M. Sencindiver), Summary of Moisture Problem, Status:**

1) GSA directs Keating to continue remediation and the application of paint or fabric wallcovering.
2) GSA verifies Keating has removed all wallboard and replaced with greenboard per draft protocol issued 12/12/97. GSA acceptable finishes are:
   a) Zolotone paint in Rooms 221, 251, 253, 320, 353, 420, 453, 545, 546.
   b) Vinyl wall covering or better in rooms, 328, 330, 332, 333,334, 363, 364, 365, 367, 430, 431, 432, 433, 434, 457, 464, 465, 466, 467, 517, 518, 525, 526, 527. Completion date due on 1/16/98.
3. GSA confirms permeability of fabric wallcovering and primer paint is not available.
4. Seal Plenum joints; direction will be given after CH2MHill completes 1/15/98 testing.
5. Ensure building control to prevent depressurization by interlocking system controls. Keating did not respond to 12/8/98 question. CH2MHill testing will verify and provide recommendation.

1/13/98 **GSA (K.Johnson) to KDC (M. Sencindiver) GSA Project Status Summary letter 1/12/98:** Item No. 10, Mold/Mildew; reference to correspondence dated 1/12/98.

1/13/98 **KDC (D. Bitterlich) to GSA (K. Johnson/D. Koenig); GSA project Status Summary Letter 1/12/98:** Mr. Bitterlich notation on prior correspondence, GSA caused remediation delays; Keating states cause for mold/mildew is vinyl and reserves right to claim for all costs and rent unduly withheld and damages.

1/13/98 **GSA (D. Koenig) to CH2MHill (D. Odom), Landis and Staefa Trend Data Reports 12/9/97 to 1/9/98:** Report includes on/off cycle from 6 a.m. to 6 p.m. of A.H.U. 3-1, 3-2, 4-1, 4-2, 5-1 and 5-2 for period noted. Transmittal includes Landis and Staefa cover letter dated 1/12/98.

1/13/98 **GSA (K. Johnson) to KDC (M. Sencindiver); Telecon between D. Koenig, GSA, and D. Dirscherl, KBC:** Letter serves to confirm conversation between Mr. Koenig and Mr. Dirscherl regarding finishes; Keating does not intend to replace finishes in impacted rooms with originally

specified V.W.C. to damaged walls.

a) GSA will accept V.W.C. in impacted rooms (noted in GSA letters dated 11/28/97 and 1/12/98), *based upon Keating's written certification that the remedies implemented by Keating, as a result of the recommendations from CH2MHill, address and resolve the problems of outside air infiltration and subsequent moisture build-up which led to the original mold growth.* GSA would release rent outside of the impacted areas; based upon timely completion of issues in GSA 1/12/98 letter. Rent would be released upon completion of acceptance of all remedial work.

b) Paint is an unacceptable finish and does not meet lease contract requirements and C.D.G. finishes for chambers suite.

c) Please inform GSA of your proposed finish in chambers suites. Must be equivalent in quality/appearance to this V.W.C. This proposed finish must be applied to all finished walls to maintain the integrity of Keating's original design intent and full C.D.G. compliance.

d) Impacted rooms are: 328, 330, 332, 333, 334, 363, 364, 365, 366, 367, 430, 431, 432, 433, 434, 457, 464, 465, 466, 467, 517, 518, 525, 526, 527.

e) Because of the disruption and associated demolition of existing walls, and the replacement of finishes, GSA cannot consider chambers suites to be usable and occupiable until work, including acceptable clean-up, is completed.

f) The untenantable condition of the chambers prevents court staff, as well as U.S.M.S. from relocating operations into new building. This forces GSA to withhold rental payments for the untenantable areas, as well as USMS portion of that 1st through 5th floors; per SFO Vol.2, Part. 1, Para. 3.1, delivery and condition.

g) Given the urgency, provide intended course of action and schedule by 1/15/98.

1/15/98 GSA (D. Koenig) to KDC( M. Sencindiver), Notice that Chamber Suites are not usable/occupiable due to unacceptable finish: Mr. Koenig notification to M. Sencindiver that rooms with replaced wallboard have an unacceptable finish which does not meet lease contract or courts design guide. GSA cannot consider suites/offices usable and occupiable until acceptable finishes are installed. GSA will be forced to withhold rent for untenable areas, including USMS area and the entire 2nd through 5th floors per SFO Vol. 2, Part. 1, Para.3.1. Keating's proposed finish must be

equivalent to in quality and appearance to V.W.C. approved in lease specifications.

1/15/98 — **KDC (D. Bitterlich) to GSA (D. Koenig); Photos of Remedial Work:** Verification that no mold/mildew exists following the completion of all wallboard and insulation removal and discharge to GSA container.

1/16/98 — **Cozen O'Connor (F. Jacoby, Esq.) to GSA (D. Parks-Curran, Esq.); Keating "Not Responsible" and is suffering hardship:** Mr. Jacoby correspondence states;

a) Questions Ms. Parks-Curran first-hand account of conditions,
b) Keating seriously questions whether GSA or subtenants were ready to occupy.
c) Minimal disruption of acoustic panels, did not interfere with ability of GSA or subtenants to use or occupy building.
d) Keating is not responsible for conditions due to vinyl wallcovering.
e) in either case, Keating cannot be held responsible for disruption due to alleged conditions; in particular, when subtenant was not prepared to occupy
f) Keating continues to resolve punchlist items; the work does not interfere with occupancy.
g) Keating continues to suffer material and economic hardship due to caprigolis conduct of G.S.A.
f) Finally, Keating will claim impact due to conduct by GSA with respect to renewal period subject to ground lease.

1/20/98 — **KDC (D. Bitterlich) to GSA (D. Koenig); Request for status/issuance CH2MHill Report:** Mr. Bitterlich requests per CH2MHill tests on 1/15/98, regular unoccupied mode, regular occupied mode, and full cooling mode; a comparison to CH2MHill prior test, conditions, results, and recommendations; recommendation for use of vinyl wall covering. Bitterlich closed noting that KDC representation, Cosentini and Project Manager, were *not* advised of post-testing meeting and conference call. This continual separation of Project Team members eliminates the benefit to cohesively mitigate the issues.

1/20/98 — **KDC (D. Martin) to GSA (D. Koenig); Response to GSA letter 1/15/98 and CH2MHill Test results on 1/15/98:** Mr. Martin response to GSA 1/15/98 letter:

a) GSA Advised that paint is unacceptable finish. Courthouse accepted

on 8/1/97 by GSA, meets all material respects of SFO;

b) Moisture is not result of any failure to meet SFO;

c) Existence and/or remediation of problem is not charge or a basis to withhold rent. Keating will submit costs and expect payment. Paint is an acceptable alternate finish per base SFO. Vinyl, originally called for by GSA, is not workable.

Insofar as the 1/15/98 inspection and test:

1) CH2MHill and Cosentini agreed upon testing that no negative pressure was found. CH2MHill also stated that vinyl was unwise on exterior walls, and would strongly recommend against such installation.

2) Chief Judge Vinson advised C. Vann on 1/16/98, that he would insist that vinyl wallcovering would be installed on exterior walls; Keating will not comply with any such direction from GSA. Keating will video tape interiors for future use in our claim.

1/20/98 — Pensacola News Journal Article; "Courthouse Mildew Mystery Solved." Article overstates that air-conditioning design flaw and vinyl wallcovering trapped moisture. Chief Clerk Mossing quoted, *"It's not 100 percent resolved by any means....but we are hoping the work is completely done and accepted sometime in mid-February."*. GSA's Mr. Mote states *"when building is negative pressurization, outside air can be drawn into wall cavity and trapped at vinyl"*.... *"and its the contractor's problem"*; CH2MHill's David Odom quotes, *"We recommended a breathable finish, like paint, so it won't trap the moisture even if it gets in there"*; *"I think some Judges would like vinyl, but its not a good idea; Florida buildings are surrounded by six months of inhospitable conditions, it doesn't take much going wrong for a problem"*. GSA's Mr. Mote said, *"delays in the opening of Federal buildings are not unusual."* Judge Collier quoted *"its between Keating and GSA, the problem is past us."*.... *"I'm confident that this will be a superior building once it is resolved."*

1/22/98 — GSA (K. Johnson) to KDC (D. Martin); Reference to KDC letter 1/20/98 per the moisture/mildew:

- GSA accepted courthouse for beneficial occupancy and initiated rental payments on 8/1/97.
- However, October 6, 1997, acoustic panels in each courtroom began to sag making courtrooms unusable for their intended function, and,

therefore, remaining portions of this building untenantable.

- GSA letter 10/23/97, outlines GSA position/intent regarding withholding payments, effective 10/6/97.
- This, and other critical items since July, have *only now* been nearly completed. GSA determined that areas not impacted by mold are acceptable for occupancy, but only as of 1/15/98.
- Regard SFO Vol. 2, Part 4, Para.4.2 and 4.3, Keating is liable for comprehensive remediation of both cause and effect of the moisture. GSA did not cause problem in your building, GSA is not responsible for the cost of remediating problems with your building.
- GSA hired CH2MHill for *extensive* testing, to review and identify cause and action to remediate. Preliminary reports, reviewed and accepted by Keating and GSA (see 11/18/97 letter), resulted in on-going remedial effort. The final report, result of more intensive testing conducted 1/15-16/98, will be issued 2/2/98.
- Terms of finishes; paint is unacceptable in chambers suites; GSA accepted Zolotone outside of chambers as a practical approach to resolution. V.W.C. per finish schedules from Keating, approved by GSA, or an equivalent in quality/appearance. Also Keating original design intent integrity must be maintained on all walls of chambers.
- GSA understand Keating chooses to default and is forced to initiate action to install V.W.C. All costs will become a claim of the Government to lessor's future rental payments. REF: SFO Vol.2, Part.1, Para. 3.3; delivers/condition; SFO Vol. 2, Part.1, Para.3.1, Default.

1/23/98 — **GSA (D. Koenig) to KDC (D. Bitterlich); GSA adds column to scope of remediation:** Mr. Koenig issued memo that column enclosure offset from exterior wall in Room #251, should have vinyl wallcovering removed and painted with Zolotone. Koenig added question, who is representing Keating since C. Vann is offset?

1/23/98 — **KDC (D. Bitterlich) to GSA (D. Koenig): GSA adds column to Scope of Remediation:** Mr. Bitterlich confirms to Mr. Koenig following telecon that GSA requires vinyl to be removed from columns at exterior wall. Mr. Bitterlich notes that:

a) Columns were not included in GSA protocol, nor scope;
b) Columns were not impacted by mold/mildew, as witnessed by CH2MHill in initial onsite inspection;
c) This is additional time and expense toward remediation, at GSA

direction. Mr. Richard Frazier of Reynolds, will inspect concerns in Keating's behalf.

1/26/98 — **GSA (D. Koenig) to KDC (D.Bitterlich);GSA adds column to scope of remediation:** Mr. Koenig notes in fax response that column is located in middle of exterior wall area and should have V.W.C. removed. This is part of original remediation and should be addressed.

1/27/98 — **KDC (D. Bitterlich) to Reynolds (R. Frazier); GSA adds column to remediation:** Mr. Bitterlich attached and confirmed GSA directive for column in Room 251. Reiterated notice to remobilize workmen and proceed. Although columns were *not* impacted and that prior inspections by GSA on site representatives, Mr. Plemmons and Mr. Fletcher, have been superseded.

1/27/98 — **KDC (D. Bitterlich) to GSA (D. Koenig), Final Air Balancing Report:** Mr. Bitterlich issued an updated status of completion memo to Mr. Koenig. Exhibited and noted were: The issuance of final balancing reports to Mr. Ducote on 10/3/98, with Cosentini's 10/2/98 review and approval.

- Southern Balance Inc., Test and Balance Dates: 5/5/97 at second floor, 5/7/97 at third floor, 5/13/97 at fourth and fifth floors, retesting of all V.A.V. terminals and started exhaust fan tests, 7/26/97 final check of electric duct heaters, chilled and condenser water flow.

1/28/98 — **KDC (D. Bitterlich) to GSA (D. Koenig); CH2MHill Report not issued/Zolotone remobilization for column in Room #251:** Mr. Bitterlich requested copy of CH2MHill preliminary report from tests on 1/15/98 originally due to Keating on 1/26/98 per Koenig telecon on 1/20/98. Affirmed that final issuance is anticipated on 2/2/98 per Ms. Johnson's letter 1/22/98. Keating requests consideration of preliminary report data for review.
Zolotone painting on column to be completed 1/28/98; remuneration required for this cost and all mold/mildew damages.

1/29/98 — **KDC (D.Martin) to GSA (K. Johnson); Building was always tenable; objection to GSA letter 1/22/98:** Mr. Martin addresses Keating's position in response to GSA letter 1/22/98:

a) Acoustic panels do not render courtrooms, building unusable for their intended purpose, or not occupying the building;
b) GSA determination to withhold rent is without basis, and Keating submit claim and damages;

c) Keating is not liable for moisture problem, resultant from vinyl wallcovering. GSA must be accountable;

d) GSA continues to refuse to provide Keating with preliminary report and/or test results of the 1/15/98 meeting;

e) GSA actions are unconscionable, to attempt to hold Keating accountable and improperly withhold rent;

f) GSA letter represents that additional tests were performed on 1/16/98, please provide scope, purpose and results.

g) Keating painted remediated walls to provide the tenant with a positive and comprehensive aesthetic effect. Mitigate GSA costs, pending GSA determination of other finishes.

h) Keating properly refused to reinstall vinyl. Testing was conducted 1/15/98, had not yet been performed. Keating objects to any contention that the building was untenable.

I) Keating has not defaulted or refused to remediate any obligation. GSA to date, has not determined that wallcovering should be placed on walls in question. Upon such determination, all work would be beyond the scope of the lease agreement.

j) Keating continues to strenuously object and protests GSA's ongoing efforts to ignore the fact that the moisture problems are that of the GSA.

k) Keating is willing to meet with your representatives. GSA must honor its obligations to pay rent, and has failed to comply with the notice provisions.

2/03/98 KDC (D. Bitterlich) to GSA (D. Koenig); CH2MHill Report of 1/15/98 testing, still not issued: Mr. Bitterlich confirms voice mail to Mr. Koenig on 1/28/98 and 2/3/98, GSA still has not issued a draft nor the final report, as previously promised by Mr. Koenig in prior teleons, and per Ms. Johnson's letter.

2/03/98 Cozen & O'Connor (F.W. Jacoby, Esq.) to GSA (D.Parks - Curran,Esq.); Lease Renewal Claim/F.O.I.A. Request and withholding rent/F.O.I.A. Request: Mr. Jacoby's notification to GSA of Donation Agreement between GSA and City of Pensacola versus the GSA Lease Agreement and Negotiations, based upon subsequent conversations between M. Sencindiver and Dan Koenig.

- M. Sencindiver telecon with D. Koenig in October 1996, "GSA was proceeding with expectation that upon expiration of initial (20) twenty year term, the underlying fee interest, in property, the

improvements, (i.e. Courthouse) would be donated by the City of Pensacola to the GSA, thereby obviating GSA necessity to exercise the renewal option under the lease. Mr. Koenig acknowledged, GSA had *no* intention of renewal.

- M. Sencindiver's first knowledge of Donation Agreement conditions, following extensive negotiations specific to renewal options of the lease, whereby frustrating KDC expectations to exercise such options.
- November 1995, GSA insisted KDC's execution of ground lease with the City of Pensacola simultaneously with the GSA lease, with GSA's full knowledge of their intention to subterfuge KDC reasonable expectations. Donation Agreement finalized between the City of Pensacola and GSA in January 1996.
- KDC submitted F.O.I.A. request relating to Donation Agreement approximately (One 1) year after execution of the GSA lease.
- Prior to commencement of legal proceedings against GSA, and its representatives, Please provide documents/information to explain actions by GSA, and its apparent failure to communicate the terms of the Donation Agreement prior to execution of the GSA lease, and the actual 'opposed to the professed' intentions of the GSA not to exercise renewal options.
- Also pursuant to F.O.I.A., we request all documents relating to the cost and price, and technical analysis; evaluating proposals by KDC and other parties.

Pursuant to KDC's claim for withheld rent, costs, damages; provide any negotiations, communications and/or agreements (written/oral) between:

1. GSA and Court System, and any affiliated entity with respect to the subject building and property, and its use, occupy, improve or lease building and property.
2. GSA, Court system, City of Pensacola regarding Donation Agreement.
3. GSA, Court System, and consultants/vendors regarding, any design and performance requirements relating to and transactions arising out of Item-1 and Item-2 above.
4. GSA and Court System respect to; tenant improvements, security systems, telecommunications, or other work on behalf of GSA and court system at property/building.